## ANDERSON v. CLAYTON et al.

No. 2216. Decided July 12, 1911 (117 Pac. 41).

1. PARTNERSHIP—DISSOLUTION—NOTICE—FAILURE TO GIVE. Where the public was not given notice in any way of the dissolution of a firm, though the remaining partner was directed to give such notice, the partnership relation continued to exist as to third persons dealing with the firm. (Page 353.)

2. PARTNERSHIP—LIABILITIES AS TO THIRD PERSONS—MANAGING PARTNER. A contract by the managing partner within the scope of the partnership business bound the other partner, though he had no actual knowledge thereof. (Page 353.)

3. SPECIFIC PERFORMANCE—ACTIONS—SUFFICIENCY OF EVIDENCE—APPROVAL OF CONTRACT. In an action for specific performance of an agreement to convey land on another's approval of the contract, evidence *held* to show that such other approved the contract by another contract made by himself and wife. (Page 353.)

4. APPEAL AND ERROR. A part of a judgment of which none of the parties complained will not be disturbed on appeal. (Page 354.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Parley Anderson against Nephi W. Clayton and others.

Judgment for defendants. Plaintiff appeals.

REVERSED AND REMANDED IN PART WITH DIRECTIONS.

*Evans & Evans* for appellant.

*Young & Snow* for respondent Clayton.

*Stewart, Stewart & Alexander* for respondents Lawver and Goddard.

STRAUP, J.

The appellant, plaintiff below, alleged in his complaint that the defendant Nephi W. Clayton, at the time of and prior to the alleged grievances, was the owner of certain described real estate of the value of $2500 at the commencement of this action; that Clayton and the defendant Cummings were copartners in business engaged in buying, selling, and dealing in real estate under the firm name of "Clayton & Co."; that on the 15th day of August, 1905, Clayton & Co., by Cummings, executed and delivered to the plaintiff a writing as follows:

"Salt Lake City, Utah, Aug. 15, 1905. Received of Parley Anderson the sum of four hundred and fifty (450) dollars as part purchase price, to-wit, twelve hundred and fifty (1250) on lot two (2), block one hundred and forty-five, plat 'D,' Salt Lake City survey, subject to the approval of the owner, N. W. Clayton.) The balance of the purchase price, eight hundred dollars, to be paid on or before July 1, 1906, with seven per cent interest from date until paid. It is understood and agreed that the said N. W. Clayton shall furnish an abstract of title and warranty deed to said lot when the balance of said purchase price shall have been paid. If the title to said lot should prove unmarketable then the money now paid shall be returned to said Parley Anderson. Clayton & Co., Per M. L. C., Agent."

It was further alleged that the defendants N. W. Clayton and Sybella W. Clayton, his wife, subsequently ratified and adopted the writing or agreement; that the plaintiff had performed all of the conditions of the agreement on his part to be performed; that the Claytons refused to convey the property to plaintiff on his demand; that the Claytons, on the 8th day of March, 1907, by an instrument in writing, also agreed to sell and convey the property to the defendant Lawver for the sum of $1900, who assigned his interest to the defendant Goddard; and that both of them had knowledge and notice of plaintiff's interest. The Claytons, Cummings, Clayton & Co., Lawver, and Goddard were all made defendants. The relief prayed for against the Claytons was to require them to convey the property to the plaintiff; that, as against the plaintiff, the defendants Lawver and Goddard be adjudged to have no title or interest in or to the property; and that, in the event a conveyance could not be had, plaintiff be given a judgment in the sum of $2500 damages.

To this complaint the Claytons filed an answer admitting their ownership of the property, the agreement made by them to sell and convey the property to Lawver, and the assignment thereof to Goddard; denying all other allegations of the complaint; and pleading the statute of frauds—"that said alleged contract for the sale of said land as mentioned in plaintiff's complaint, nor any note or memorandum thereof in writing, was ever subscribed by defendants or either of them, or by the lawful agent thereunto authorized in writing

by these defendants or either of them." The defendants Lawver and Goddard answered, also admitting that the Claytons were the owners of the property, that Clayton had entered into an agreement with Lawver to sell and convey the property to him, and that the agreement had been assigned to Goddard; alleging the value of the property to be $3000; and denying all other allegations of the complaint. By way of counterclaim and cross-complaint they set forth their written agreement, by the terms of which Clayton had agreed to sell and convey the property to them for the sum of $1900; alleged that they had made a tender of the purchase price, a demand for a conveyance clear of the incumbrance created by an agreement in writing from the Claytons to the plaintiff, by the terms of which they had agreed to convey the property to plaintiff, and a refusal of the Claytons to give a conveyance clear of such incumbrance. The relief prayed for by them was a conveyance from the Claytons to Goddard, and, if that could not be had, a judgment against them in the sum of $1050.

Upon the trial of the issues to the court, findings were made that on the 15th day of August, 1905, "the defendant Cummings" executed and delivered to the plaintiff the memorandum or writing set forth in plaintiff's complaint; that the Claytons had no knowledge or notice of the memorandum until after the commencement of this action, and "never ratified or adopted the terms or conditions thereof"; that "the plaintiff has not performed his part of said memorandum or agreement"; that on the 8th day of March, 1907, the defendant N. W. Clayton executed and delivered to Lawver an instrument in writing, by the terms of which Clayton agreed to sell and convey the property to Lawver, as set forth in his counterclaim and cross-complaint; that Lawver assigned the agreement to Goddard; that Goddard on that day tendered to the Claytons the amount of money agreed to be paid by that agreement, and demanded a deed; that Goddard refused to accept the deed tendered to him by Clayton "for the reason that the said lands were not then free and clear of incumbrance, inasmuch as the said memorandum or

agreement mentioned in the plaintiff's complaint and executed and delivered to the plaintiff by said M. L. Cummings constituted an incumbrance or cloud upon the title to the said lands; that the said memorandum then and there constituted and created a cloud and incumbrance upon the title to said lands"; that the real estate at the time of the tender was of the value of $2800; and that Goddard, by reason of the refusal of the Claytons to deliver to him a deed clear of the incumbrance mentioned, was damaged in the sum of $900.

Upon these findings the court stated conclusions dismissing plaintiffs complaint, dismissing the action as against Sybella W. Clayton, and holding that the defendant Goddard was entitled to a decree against N. W. Clayton requiring him to convey the property to Goddard, "and if specific performance becomes impossible by reason of the refusal of Sybella W. Clayton, the wife of N. W. Clayton, to join in the deed, then the said Goddard is entitled to a judgment against said N. W. Clayton in the sum of $900 with interest;" and "that the plaintiff is not entitled to recover judgment against the defendants or either of them and is not entitled to any relief prayed for in plaintiff's complaint." A judgment was entered accordingly, from which the plaintiff has prosecuted this appeal, assailing the findings and conclusions as being unsupported by and against the evidence.

The undisputed evidence shows that the defendants N. W. Clayton and M. L. Cummings were partners in business under the firm name of Clayton & Co., engaged in the business of buying and selling and dealing in real estate. Clayton himself testified that: "Among other things, I was engaged in the real estate business with M. L. Cummings. We formed a copartnership early in April, 1905, and opened an office at No. 153 South Main Street, and put up signs indicating the name of the firm and the business we would engage in. The firm name was Clayton & Co. Mr. Cummings was in active charge of the business, being the managing partner. I would sometimes go in to advise with him. The copartnership was formed for the purpose of deal-

ing in, buying, and selling real estate, the real estate business. Cummings was the one who entered into the contracts and who did the business of the company." He further testified that he, in July, 1905, on a return trip from New York, "become suspicious of Cummings, and required him to make a statement of the business up to July 1st. His statement was not satisfactory, and I asked him to terminate the partnership and pay all the debts then existing, and that if he would do so he could have all that he could make out of it. He agreed to it and said he would attend to it immediately. I told him to take the signs off the windows. He said he would attend to the giving of notice of dissolution. I don't know whether he did these things or not. I left that all to him. I did nothing further towards dissolving the partnership or terminating it than the statements made by me to Cummings. . . . I suppose that, as far as the public were concerned who would deal or might deal with the company, it was still Clayton & Co., after my talk with Cummings, so far as any steps I took to give notice of dissolution. I was in Salt Lake during 1905, but left for Europe in January, 1906, returning to Salt Lake in March, 1907."

The evidence, without dispute, shows that no notice of dissolution of the partnership was given, or that any further or other steps were taken to terminate it. The evidence also without dispute, shows that on the 15th day of August, 1905, Clayton & Co., by M. L. Cummings executed and delivered to the plaintiff the memorandum or writing set forth · in his complaint. Against this undisputed evidence the court found the memorandum was made by M. L. Cummings, and not by Clayton & Co. The evidence, also without dispute, shows that three days thereafter, and on the 18th day of August, Nephi W. Clayton and his wife, Sybella W. Clayton executed and delivered the following instrument in writing:

"This agreement, made this 18th day of August, A. D. 1905, between Nephi W. Clayton and Sybella W. Clayton (his wife), of Salt Lake City, county of Salt Lake, and state of Utah, parties of the first part, and Parley Anderson of the county of Tooele, state of

Utah, party of the second part, witnesseth: That, in consideration of the sum of four hundred and fifty dollars, in hand paid by the second party to the first parties, the receipt whereof is acknowledged, the said first parties agree that upon the payment by the second party on or before the first day of July, 1906, of the further sum of eight hundred dollars, they will convey to the second party, or assigns, by warranty deed conveying good and marketable title and releasing dower, all that parcel of land situate in the city and county of Salt Lake, state of Utah, described as follows: All of lot two (2), block one hundred and forty-five (145), Plat 'D,' Salt Lake City survey. Said sum of eight hundred dollars to be paid in the following manner, to-wit, . . . upon the delivery and acceptance of deed to said lot, on or before said first day of July, 1906. With interest at the rate of seven per cent. (7%) per annum on all deferred payments from the date of this contract and all taxes after 1905. The first parties agree to furnish to the second party, or his assigns at their own expense, on or before the first day of September, 1905, an abstract of title to said premises continued to date hereof. But in case said second party or his assigns fail to make said payment within the time above limited this agreement becomes of no effect, and the money now paid is forfeited to said first party. Witness our hands and seals the day and year aforesaid. Nephi W. Clayton. [Seal.] Sybella W. Clayton. [Seal.] In presence of: M. L. Cummings."

This instrument was acknowledged on the date of its execution before "M. L. Cummings, Notary Public," and on the 25th day of November, 1905, was recorded. Again, in the findings of the court no mention is made of this agreement, nor is any reference made to it, notwithstanding its execution and delivery was undisputed and was testified to by Clayton himself.

Clayton also testified that he had no knowledge or notice of the memorandum or agreement executed on the 15th day of August and set forth in plaintiff's complaint until after the commencement of this action, and that he had not "prior to the 15th day of August, 1905, authorized Cummings to sell any property for him." He, however, did not testify that he had not authorized him on that day, or thereafter, to sell the property in question. To the contrary, he testified that: "I had been trying to sell that property for many years for $1100. . . . Cummings asked me what I would take for it. I told him $1100 net. He says, 'How long will you

give me ?' I told him, 'To-day.' He returned in the after-
noon with $450 in cash, and asked me if I would sign a con-
tract for the balance, which was $800 to be paid on or be-
fore a certain date with interest. I told him, 'Yes, I was
going away and needed the money.' " Clayton further testi-
fied that he and his wife thereupon executed and delivered
the instrument in writing dated August 18th, by the terms
of which they acknowledged the receipt of $450 from the
plaintiff and agreed to sell and convey the property to him
upon a further payment of $800 on or before July 1, 1906,
and thereby agreed to sell and convey the property to the
plaintiff upon the same terms and conditions stated and
specified in the agreement made by Clayton & Co. to the
plaintiff on the 15th day of August. Yet, notwithstand-
ing the making of such agreement by the Claytons three days
after the execution of the writing by Clayton & Co., and
their agreement, over their own signatures, to sell and con-
vey the property to the plaintiff on exactly the same terms
and conditions stated in the writing of Clayton & Co., the
court found that the Claytons "never ratified or adopted the
terms or conditions" stated or specified in the memorandum
made by Clayton & Co.

The first payment of $450, the receipt of which was ac-
knowledged by both Clayton and his wife, was made by
plaintiff by check payable to the order of "Clayton & Co."
Between the time of that payment and the 1st day of July,
1906, he paid the balance of the purchase price, $800, to-
gether with the interest thereon, to Clayton & Co., or to
Cummings, the active manager of the firm; the last payment
being on the 3d day of February, 1906, when he paid
$549.75. After all such payments had been made and a final
receipt given acknowledging payment in full, and after Clay-
ton had returned from Europe, plaintiff's brother, who, at
Salt Lake City, was looking after his brother's interest in
his absence, telephoned Clayton and asked him for a deed.
Plaintiff's brother testified: "I called him up by phone and
asked him to fix the matter up. He said he had no dealings
with me at all. I told him I was taking care of my brother's

interest; but he said he had no dealings with me at all. I asked for a deed; but he wouldn't give it to me. I made the demand for a deed shortly after Clayton's return from Europe. I don't know the exact date, but it was after July, 1906." That the plaintiff paid the entire purchase price called for by his contract is beyond dispute. But he paid it to Clayton & Co., or to Cummings, the managing partner of the firm; some checks being payable to the order of Clayton & Co., others to the order of Cummings, who, in each instance, gave a receipt signed "M. L. Cummings," or "M. L. Cummings, Agent." The evidence, however, further shows, as testified to by both Clayton and Cummings, that Clayton actually received only $300, which was paid to him out of the first payment, and that $150 of that payment was deducted for a commission, and that no part of the $800 was actually received by him; and there lies the nub of the whole matter, giving rise to this lawsuit. Why the moneys paid by plaintiff to Clayton & Co., or to Cummings, were not paid to Clayton, is not made to appear, except that in July, 1905, Cummings' report to Clayton was not satisfactory, and the latter desired to have the partnership terminated. But it is not made to appear that Clayton ever made any demand on Cummings, or on Clayton & Co., for the money received from the plaintiff, or that Clayton tried to collect it from him or from the company, or that Cummings misappropriated or converted the money, or that he or the company was unable to pay it.

The evidence further shows, as found by the court, that on March 8, 1907, the defendant N. W. Clayton, alone, and not his wife, entered into a contract in writing with Lawver, by the terms of which he agreed to sell and convey the property to him for the sum of $1900, and that that agreement was assigned on the same day to Goddard, and that Goddard, on that day, made a tender of the purchase price and demanded a deed. Goddard testified that, when he made the tender and demanded a deed, he also demanded of Clayton that he remove the cloud on the title created by the written agreement given by Clayton and his wife to the plaintiff, and that Clay-

ton said: "He didn't have anything to do with that; that was outlawed; he wouldn't clear it up; so I objected to receiving the deed on that ground."

Upon this evidence counsel for Clayton and Goddard defend the findings and the judgment on the theory that plaintiff's complaint was grounded on the memorandum made by Clayton & Co., and since that writing, as testified to by Clayton, was made without his knowledge or consent, until after the commencement of this action, the making of the written agreement by Clayton and his wife on the 18th, did not constitute a ratification nor an adoption of the first writing; and that the plaintiff cannot recover on the second writing, the agreement of August the 18th, because he did not declare on that writing, and, further, because the payments made by plaintiff to Clayton & Co., or to Cummings, were not, in law, payments to Clayton, neither Clayton & Co. nor Cummings, as is argued, being agents of Clayton authorized to receive the payments for him. It is not so clear, as is urged by counsel, that the complaint declared alone on the memorandum of August 15th. The plaintiff did set forth in his complaint the memorandum made by Clayton & Co. on that date and alleged that the Claytons subsequently ratified and adopted it, without alleging the manner, or the facts, of such adoption or ratification. Of course, the plaintiff contends that the execution and delivery of the agreement of the 18th by the Claytons constituted such an adoption or ratification. Because of the partnership relation, and of the undisputed evidence heretofore referred to, the pertinent question here is, not so much whether Clayton then had actual knowledge of the memorandum or writing made by Clayton & Co., but whether he and his wife, by a writing subscribed by them sufficient to satisfy the statute of frauds, agreed to sell and convey, or authorized a sale and conveyance of, the property to the plaintiff on the same terms and conditions stated and specified in the memorandum of Clayton & Co. That Clayton and Cummings were partners in business engaged in buying, selling, and dealing in real estate is conceded.

As affecting third parties who dealt with the firm, that partnership relation was not dissolved, but existed during all of the transactions in question. Cummings was the active manager of the firm, and the person, as testified to by Clayton himself, "who entered into the contracts and did the business of the company." Now, Clayton & Co. entered into a contract with the plaintiff to sell and convey to him the real estate in question, subject to the approval of Clayton, the owner of the property. Cummings had the undoubted authority to make such a contract.

Though Clayton did not have actual knowledge, as testified to by him, that such a contract had been made with the plaintiff by Clayton & Co., still, the contract having been so made in the course and within the scope of the partnership business by the active manager and a member of the firm, and by a person authorized to make such a contract, was Clayton's contract, as much as Cummings.' It was the firm's contract binding on Clayton, and on every other member of the firm, though Clayton had not actual knowledge of it when it was made.

The contract being subject to Clayton's approval, the owner of the property, the next question is: Did he approve of it? That is answered by the written contract or writing executed and delivered by himself and his wife, on the 18th day of August, by the terms of which they both agreed to sell and convey the property to the plaintiff on exactly the same terms and conditions expressed in the contract or memorandum made by Clayton & Co. The plaintiff, in his negotiations and dealings, dealt with Clayton & Co. In so doing he, in law, dealt with Clayton himself, as he also did with every other member of the firm. All his payments were made to the firm and to the active manager who "did the business for the company." The contention, therefore, as urged, that the payments made by plaintiff of the $800 were made to one not authorized to receive them, is untenable. If Clayton & Co. have not accounted to Clayton for the money, he must look to them, not the plaintiff.

39 Utah—23

Upon the undisputed evidence we think the plaintiff was entitled to a judgment requiring the Claytons to convey the property to him. The judgment of the court below, denying him such relief, and directing a conveyance to Goddard, is, therefore, reversed, and the case remanded to the district court, with directions to make findings, and to state conclusions, in accordance with the views herein expressed, and to enter a judgment in favor of the plaintiff requiring the Claytons to convey the property to him by warranty deed, and adjudging that the defendants Lawver and Goddard, as against the plaintiff, have no right, title, or interest therein or thereto.

No complaint is made by Clayton, or by any one, of the judgment requiring him to pay $900 to Goddard in the event of Clayton's inability to convey the property to Goddard. Nor is there any complaint or contention made that such matters arising on the counterclaim or cross-complaint affected, not all, but only a portion, of the parties, nor is any relief asked against the judgment in such particular, nor is it in any manner questioned. Both Clayton and Goddard united in their efforts to defeat plaintiff's claim, and seem content with that part of the litigation terminating in a money judgment against Clayton and in favor of Goddard. At least neither complain of it.

Hence that portion of the judgment is not disturbed by us. Costs to appellant.

FRICK, C. J., and McCARTY, J., concur.